_____

**SO ORDERED,**



*Judge Selene D. Maddox*

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| **IN RE: R.L. BRAND & DEBORAH P. BRAND** | **CASE NO.: 20-12492-SDM** |
| **DEBTOR(S).** | **CHAPTER 7** |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO RECONSIDER (DKT. #187)**

**THIS CAUSE** comes before the Court on the Debtors' *Motion to Reconsider* (Dkt.#187)("the Motion"), the U.S. Trustee's *Objection* to the Motion (Dkt.#197), the *Joinder* of Planters Bank & Trust Company ("Planters") in the Trustee's Objection (Dkt.#199), the *Objection* of Southern Bancorp Bank ("Southern") to the Motion (Dkt. #200), and the *Joinder* of Creditors Susan Yeager and Amelia A. Nichols (collectively "Yeager") in the Motion (Dkt. #209). On July 8, 2021, the Court conducted a telephonic hearing on the Motion, at the conclusion of which the Court took this matter under advisement. The Court is now prepared to rule.

**I. JURISDICTION**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated

August 6, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A)(matters concerning the administration of the estate).

## II.  FACTS AND PROCEDURAL POSTURE

The Debtors are R.L. Brand and Deborah P. Brand ("the Brands") who initially filed this case as a small business bankruptcy case pursuant to Chapter 11 Subchapter V on August 6, 2020. (Dkt. #1). From the inception of the case, the Brands consistently failed to timely file their Monthly Operating Reports ("MORs") with the U.S. Trustee's Office ("UST") as required by the UST's *Chapter 11 Operating Guidelines and Reporting Requirements*. Their delinquencies in filing MORs, as well as certain other issues, led to a motion by the UST to either convert this case to one under Chapter 7 or to dismiss it outright. (Dkt. #94). On February 1, 2021, the Court entered an order ("the February 1 order") granting in part and denying in part the UST's motion. (Dkt. #125). That order stated *inter alia* that

> the Brands shall timely file all required Monthly Operating Reports and pay all required fees. Should the Brands fail to timely file MOR's and pay all required fees, the United States Trustee shall file a notice of delinquency, giving the Debtors fourteen (14) days to cure the deficiencies. If the Brands do not cure those deficiencies within the 14-day time period, this case shall be automatically converted to a case under Chapter 7.

*Id*. Subsequently, the Brands were delinquent in filing their January 2021 MOR, the UST duly filed its Notice of Default as required by the February 1 order, and the Brands timely filed the missing MOR within the 14-day window. (Dkt. #141, 144). The Brands were again delinquent in filing their February 2021 MOR, the UST again filed a Notice of Default, and the Brands again timely cured the deficiency. (Dkt. #147, 156).

The Brands were delinquent yet again in filing their March 2021 MOR, leading to a third Notice of Default in as many months. (Dkt. #174). This time, however, the Brands failed to cure the deficiency within fourteen days, and the Court duly entered an order converting this case to

Chapter 7 on May 12, 2021. (Dkt. #178). On May 26, 2021, the Brands, through their attorney Robert Gambrell ("Gambrell"), filed MORs for March 2021 and April 2021 along with the instant Motion. (Dkt. #185, 186, 187). The UST subsequently filed an *Objection* to the Motion which was joined by Planters and Southern, while Yeager filed a Joinder in support of the Motion.[1]

On July 8, 2021, the Court conducted a telephonic hearing on the Motion with all the aforementioned parties participating. In the course of that hearing, Gambrell forthrightly attributed the failure to timely file the delinquent MORs to excusable neglect on his part resulting from certain unexpected and serious health issues suffered by his son. This, in turn, led to a significant disruption of Gambrell's practice during the time when the March MOR became due.

Gambrell also put on Mrs. Brand as a witness, and she testified that she submitted all the information needed to prepare the MORs to Gambrell's office well in advance of the Court's deadline for filing the MORs and/or curing any MOR delinquencies. Both Brands also testified as to the current status of various construction projects and other financial activities which they assert will fully fund their Chapter 11 plan. At the conclusion of the telephonic hearing, the Court took the matter under advisement.

### III. DISCUSSION

While the Federal Rules of Civil Procedure do not recognize a general "motion for reconsideration," motions such as the one before the Court are generally construed as either

---

[1] Yeager's involvement in the hearing on the Motion was premised on the desire of these creditors to see the Chapter 11 plan continue long enough at least to facilitate the sale of one of the Brand's properties, a building in Ruleville, Mississippi, presently housing a Subway Deli ("the Ruleville property"). The proceeds of this sale would pay for the settlement of Yeager's claims against Mr. Brand arising out of a $227,889.41 judgment obtained on behalf of Jacoba Louise Dooley, who is both the mother and the ward of both Yeager and Nichols. At the hearing, counsel for these creditors opposed the conversion to Chapter 7 because they feared it would result in the collapse of their settlement agreement with the Brands, leaving their ability to collect any meaningful part of the judgment from the Brands during Dooley's remaining life in doubt.

motions to "alter or amend" pursuant to Rule 59(e) or as motions for "relief from judgment" under Rule 60(b). *In re McHenry*, No. 20-00268-NPO, 2021 WL 1941625, at *3 (Bankr. S.D. Miss. Jan. 11, 2021)(discussing application of Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure[2] to "motions for reconsideration").

Under Rule 59(e), a final judgment may be amended under three circumstances: (1) there is a manifest error of law or fact; (2) there is newly discovered evidence; or (3) there is an intervening change in controlling law. *McHenry*, 2021 WL 1941625, at *3. Under the Federal Rules of Bankruptcy Procedure, a motion brought under Rule 59(e) must be made within fourteen days of the order to be altered or amended. Fed. R. Bankr. Pro. 9023. As the Motion was filed on the fourteenth day after entry of the conversion order, it is timely under the requirements of Rule 59(e).[3] However, the Court agrees with the UST that the testimony, evidence, and arguments adduced by the Brands do not fit within any of the three Rule 59(e) criteria for amending or altering the conversion order, and so the Court turns to Rule 60(b).

Under Rule 60(b), the Court may "relieve a party . . . from a judgment [or] order" for certain specified reasons, only two of which are relevant in this instance: (1) "mistake, inadvertence, surprise, or excusable neglect," and (6) "any other reason that justifies relief." *McHenry*, 2021 WL 1941625, at *3. The Fifth Circuit has identified seven factors that should shape a court's consideration of a Rule 60(b) motion:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to do substantial justice; (4) whether the motion was made within a reasonable time; (5) whether—if the judgment was a default or a

---

[2]Rule 59(e) and Rule 60(b) are made applicable to bankruptcy proceedings by Rule 9023 and 9024, respectively, of the Federal Rules of Bankruptcy Procedure.
[3]The Motion is also timely under Rule 60(b) which requires that such motions be brought within one year where Rule 60(b)(1) is implicated and simply within a reasonable time for motions premised on Rule 60(b)(6). *See* Fed. R. Civ. Pro. 60(c)(1).

dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgment, and there is merit in the movant's claim or defense; (6) whether there are any intervening equities that would make it inequitable to grant relief; and (7) any other factors relevant to the justice of the judgment under attack.

*Edward H. Bohlin Co., Inc. v. The Banning Co., Inc.* 6 F.3d 350, 353 (5th Cir. 1993).

Turning specifically to Rule 60(b)(1), the Fifth Circuit has established the following criteria for finding excusable neglect:

> Excusable neglect requires a finding (i) of neglect, and (ii) that the neglect was excusable. "Once it is established that a party's neglect 'was at least a partial cause of its failure . . . ' the moving party then has the 'burden to convince the court that its neglect was excusable.'" Whether there has been excusable neglect is ultimately an equitable determination.

*In re Perez*, 2012 WL 2576393, at *12 (Bankr. N.D. Tex. July 3, 2012)(citations omitted).

The Supreme Court has noted that the following circumstances are relevant in determinations of whether to grant relief on the basis of excusable neglect: (i) the risk of prejudice to the non-movant; (ii) the length of delay; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. *Pioneer Investment Servs. Co. v. Brunswick Associates Ltd. P'ship,* 507 U.S. 380, 395 (1993). The Supreme Court also reiterated that, in general, clients must be held accountable for the acts and omissions of their attorneys. *Pioneer Inv. Servs. Co*, 507 U.S. at 396 (holding that proper focus in "excusable neglect" inquiry "is upon whether the neglect of respondents *and their counsel* was excusable").

In light of these factors, the Court notes the following: First, the Brands do not seek to use Rule 60(b) as a substitute for appeal but merely wish to vacate a prior order of the Court entered as a result of excusable neglect on the part of their attorney. Second, the Motion was made within two weeks of the conversion order. Third, the conversion order was entered as an automatic penalty

for the Brands' failure to comply with a prior order but without any specific consideration of the merits of conversion.

As to the merits of the Brands' position, it is undisputed that Mrs. Brand provided the information necessary to prepare and file the March MOR to Gambrell's office in a timely manner, and the subsequent delinquency of the MOR was entirely the fault of neglect on the part of the Brands' counsel. As noted, Gambrell was forthright in claiming responsibility for the failure to timely submit the MOR, which he attributed to the fact that its timing coincided with a period when his son was suffering from serious health issues.[4] The Court is satisfied that neglect was at least a partial cause, if not the entire cause, of the failure to timely file the MORs.

The Brands next face the burden of persuading the Court that the neglect was excusable under an equitable determination. Of the four factors for consideration identified in *Pioneer Investment Servs. Co.,* three either favor the Brands or else are non-factors. Specifically, the delay between the entry of the conversion order and the filing of both the instant Motion and the delinquent MORs was only fourteen days, and there is no indication of any lack of good faith on the part of the Brands or Gambrell.

The remaining *Pioneer Investment* factor addresses the risk of prejudice to the non-movant(s). In the instant case, four non-movant parties participated in the July 8 hearing: the UST, Planters, Southern, and Yeager. Of those, Yeager supports the Motion. Planters and Southern oppose reconsideration, but after reviewing their arguments presented at the July 8 hearing, the

---

[4] By way of comparison, the Supreme Court in *Pioneer Investment* expressed doubt that excusable neglect was shown simply because the moving attorney's failure to timely file a Proof of Claim was attributed to "upheaval in his law practice" as a result of leaving his prior firm at the time of the negligent actions. *Pioneer Investment Servs. Co.,* 507 U.S.at 398. However, the *Pioneer Investment* Court nevertheless found that the attorney's neglect was under all the circumstances, "excusable." *Id.*

Court concludes that any "prejudice" these Creditors would suffer as a result of the Motion being granted consists merely of the fact that the case would thereafter continue under Chapter 11.[5] Both of these Creditors are of the firm conviction that the Chapter 11 plan is ultimately not feasible and that they are prejudiced by any further delay in being permitted to seek remedies against the Brands outside of Chapter 11 such as foreclosure on any collateral securing loans with Planters and Southern.

While the Court is sympathetic to the concerns of these Creditors, conversion in this instance was premised solely on a failure to timely file MORs, a requirement which exists primarily for the benefit of the UST[6] rather than creditors. Under the facts adduced at the hearing, the Court is not persuaded that either Planters or Southern will suffer any prejudice from simply returning to the status quo as it existed prior to the conversion order entered a mere two months ago, particularly where the delinquencies that led to that conversion order were corrected within two weeks of the order's entry.

Indeed, the Court is not persuaded that the UST, for whose benefit MORs are required, suffered any prejudice that outweighs the prejudice to the Brands in granting the Motion given how quickly the deficiency was corrected. Of course, it was the Court itself which entered the February 1 order mandating conversion or dismissal for any failure to timely file MORs, and the Court certainly appreciates the UST's need for MORs to be timely filed. In this instance, however, any prejudice to the UST caused by granting the Motion is outweighed by the prejudice to the Brands in converting or dismissing their case due to neglect on the part of Gambrell which was

---

[5] In fact, during his closing statement, Jeff Rawlings, counsel for Southern, indicated that, as Southern's collateral was on the cusp of being sold to completely satisfy its lien, he was content for the case to proceed under Chapter 11 or Chapter 7.

[6] *See generally* 28 U.S.C. § 586(a)(3), which charges the UST with supervising the administration of Chapter 11 cases.

swiftly corrected. While the Court admonishes the Brands to be diligent in complying with all of their obligations under Chapter 11 (and, where necessary, being more proactive in contacting their counsel with concerns when, for example, they receive documents entitled "Notice of Default" from the UST's office), in this instance, equitable considerations support a finding that the failure to timely file the delinquent MORs was excusable neglect.

In the alternative, even if the Court had not found excusable neglect on the part of Gambrell within the meaning of Rule 60(b)(1) that justifies granting the Motion, the Court would still be inclined to grant it under Rule 60(b)(6)("any other reason that justifies relief."). The Court acknowledges that relieving a party from a final judgment under the "catch-all" prong of Rule 60(b)(6) is reserved for "exceptional" or "extraordinary" circumstances. *In re Tubwell*, No. 19-12163-JDW, 2019 WL 6481968, at *2 (Bankr. N.D. Miss. Dec. 2, 2019). However, even if Gambrell's failure to timely file the MOR did not rise to the level of excusable neglect, it is certainly exceptional and/or extraordinary for an attorney or other entity upon whom the debtor relied to ensure that MORs were timely filed to simply not do so.

This is particularly true in this case where, by all appearances, the Brands have complied with every requirement of the Court other than timely filing MORs. The Brands have consistently made all adequate protection payments. They are poised to sell the Ruleville property which will allow them to pay off the claims of Southern and provide a significant down payment on the settlement with Yeager.[7] They are presently current in both MORs and quarterly payments to the

---

[7] Under the terms of the tentative settlement agreement, the Brands will pay Yeager $60,000.00 out of the sale proceeds remaining after Southern's lien is satisfied, with an additional $30,000.00 plus interest to be paid over a seven-year period.

Trustee. Over the course of a three-hour hearing, the Court heard testimony[8] pertaining to the Brands' progress on their contract with the Fanny Lou Hamer Cancer Foundation and on a separate construction contract with Tammie Cameron-Watkins. Obviously, progress on the Hamer Foundation contract remains subject to the vagaries of the weather, but if those conditions remain favorable, it appears that the Brands retain a good chance of fulfilling the Hamer Foundation contract and, with it, achieving a confirmable plan. Accordingly, even if Gambrell's failure to timely file the MOR which precipitated the conversion order does not rise to the level of excusable neglect, the Court remains of the firm conviction that the relief requested by the Brands is justified.

After due consideration, the Court believes that the most efficient way to grant the Brands' motion is to vacate the Order of Conversion. The case will return to being one under Chapter 11 Subchapter V as if it had never been converted, with all previous requirements and deadlines still in effect. In particular, the strict compliance for MORs established by the February 1 order remain in effect, and the Court will be vigilant in enforcing its prior orders. While the Court grants this Motion due to exceptional circumstances, neither the Brands nor Gambrell should expect the Court to show any such leniency for further deficiencies.

## IV. CONCLUSION

Based on the foregoing analysis, it is hereby ORDERED:

1. that the Debtor's *Motion to Reconsider* (Dkt. #187) is GRANTED;

2. that the Court's May 12, 2021 order converting this case to Chapter 7 is VACATED; and

3. that this case shall continue as one under subchapter V of Chapter 11.

##END OF ORDER##

---

[8]The witnesses called included both Brands and also Tommy Avant, a civil engineer responsible for construction management over Fannie Lou Hamer Cancer Foundation construction project in Ruleville, Mississippi.